UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASZLO G. PETERFAI, an individual, SARAH JANE PETERFAI, an individual, and on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>USA LOGISTICS INC., dba USA MOVERS, a California Corporation; TOP MOVING SPECIALISTS INC. dba HERCULES MOVING SOLUTIONS, a Florida Corporation; RADO EXPRESS LOGISTICS, INC., an Illinois Corporation; GAL ROBI JEDDAE, an individual; TRAVIS ACKERMANN, an individual; RAFAEL OHANESYAN, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 23-cv-1695-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the Motion to Dismiss filed by Defendants Gal Robi Jeddae and USA Logistics Inc. (ECF No. 5) and the Motion to Dismiss filed by Defendants Top Moving Specialists Inc., Rado Express Logistics, Inc., and Rafael Ohanesyan (ECF No. 13).

## I. BACKGROUND

On September 14, 2023, Plaintiffs Laszlo G. Peterfai and Sarah Jane Peterfai ("Plaintiffs") initiated this action by filing a Complaint against USA Logistics Inc. ("USA Logistics"), Top Moving Specialists Inc. d/b/a Hercules Moving Solutions ("Hercules"), Rado Express Logistics, Inc. ("Rado"), Ackermann Express LLC ("Ackermann Express"), Monopoly Moving LLC ("Monopoly Moving"), Gal Robi Jeddae, Travis Ackermann, and Rafael Ohanesyan (collectively, "Defendants") (ECF No. 1.)

On November 29, 2023, Defendants USA Logistics and Jeddae filed the Motion to Dismiss. (ECF No. 5.) On December 22, 2023, Plaintiffs filed a Response in opposition to the Motion to Dismiss. (ECF No. 11.) On December 28, 2023, Defendants USA Logistics and Jeddae filed a Reply. (ECF No. 12.)

On December 22, 2023, Defendants Travis Ackermann, Ackermann Express, and Monopoly Moving filed an Answer to the Complaint. (ECF No. 8.)

On January 11, 2024, Defendants Hercules, Rado, and Ohanesyan filed the Motion to Dismiss. (ECF No. 13.) On January 29, 2024, Plaintiffs filed a Response in opposition to the Motion to Dismiss. (ECF No. 14.) On February 15, 2024, Defendants Hercules, Rado, and Ohanesyan filed a Reply. (ECF No. 15.)

## II. ALLEGATIONS IN THE COMPLAINT

"In the fall of 2022, Plaintiffs were moving from California to Texas. While in San Diego County, California, Plaintiff Sarah researched online moving companies and was directed to Defendant Hercules. On or about September 3, 2022, Defendant Hercules communicated via internet and telephone to Plaintiffs to provide a quote and then 'Binding Moving Estimates' for packing and transporting household goods and furnishings from Rancho Santa Fe, California to Houston, Texas." (ECF No. 1 ¶ 18.)

In response to Plaintiff Sarah's request to use a moving "pod," Defendant Hercules represented that it "did not have any pods available until the first week of January 2023, but it had a 'turn around' truck, which would be less expensive, direct, and only Plaintiffs' belongings would be on that truck during the entirety of the transport." *Id.* ¶ 19. Defendant Hercules additionally represented that it "only hires moving companies with five-star ratings," and "Plaintiffs' items would not be transferred to another truck during transport." *Id.*

"On or about September 3, 2022, after instructing Plaintiffs to estimate the measurement for the items that Plaintiffs sought to move, Defendant Hercules sent, via the internet to Plaintiffs' computer in Rancho Santa Fe, California, a written 'Binding Moving Estimate' with Defendant Hercules' logo at the top, for the interstate move of 652 cubic feet of Plaintiffs' household goods and furnishings from California to Texas." *Id.* ¶ 20. The Binding Moving Estimate "provided a Total Moving Estimate of $4,536.09 and at that time, Plaintiffs paid the requested 'Customer Payment' of $1,570.00 by credit card, which ultimately reflected on the credit card statement as a payment to Defendant Rado." *Id.*

"On or about September 15, 2022, based on Defendant Hercules' instructions, Plaintiffs communicated again with Defendant Hercules to add a few more items and Defendant Hercules sent, via the internet to Plaintiffs' computer in Rancho Santa Fe, California, a second written 'Binding Moving Estimate' with Defendant Hercules' logo at the top, for the interstate move of 812 cubic feet of Plaintiffs' household goods and furnishings from California to Texas." *Id.* ¶ 21. The second Binding Moving Estimate provided a "Total Moving Estimate of $6,597.49 and Plaintiffs paid an additional $1,000.00 by credit card at that time to cover the requested 'Customer Payment.'" *Id.*

"On September 16, 2022, a moving truck arrived at Plaintiffs' home in Rancho Santa Fe, California with 7 men, whom Plaintiffs later learned to be associated with Defendant USA Logistics." *Id.* ¶ 22. "When the moving truck arrived, Plaintiffs were told that the items they wanted moved needed to be taken out of Plaintiffs' home and garage and placed on the street and driveway and then placed on the truck. Some of the men proceeded to

pack some of the items and wrap some of the furniture, while the other men took all of the items that Plaintiffs wanted moved out of Plaintiffs' home and garage, placed them in the street and driveway and then started placing them in the moving truck, which appeared to be a standard 26 foot box truck." *Id.*

"After Defendant USA Logistics' men started placing Plaintiffs' items on the truck from the driveway and street, Plaintiffs were told by one of the men, David of USA Logistics, that Plaintiffs' items would 'fill the entire truck.' David of USA Logistics then said to Plaintiffs that the new cost for the move was $23,000.00, which was more than three times the amount contained in the [second Binding Moving Estimate]." *Id.* ¶ 23. Plaintiff Lasz[lo] told the men to stop and that Plaintiffs would not be moving forward with the move. "David of USA Logistics then threatened Plaintiffs by saying that if Plaintiffs stopped the move, in addition to losing Plaintiffs' deposit of $2,570.00, Plaintiffs would have to pay $5,000.00 more to unload and place Plaintiffs' belongings in the street and driveway; the men would not return the belongings to the house or garage." *Id.* ¶ 25. "Plaintiffs felt like they had no choice so when David said that Defendant USA Logistics would complete the move for $17,500.00, Plaintiffs paid the additional deposit demanded of $9,700.00 (at this time the total amount of deposits paid were $12,270). Despite Plaintiffs' protests, once the men from USA Logistics placed Plaintiffs' remaining items in the truck, they immediately drove away with Plaintiffs' belongings." *Id.* ¶ 26.

"On or about Saturday, September 24, 2022 at around 12:30 pm and without any advance notice, a person who identified himself as being from another company named Monopoly Moving, and who was later identified as Travis Ackermann of Ackermann Express LLC and Monopoly Moving LLC, telephoned Plaintiff Sarah, who was now at Plaintiffs' home in Houston, Texas, and told her that he was going to deliver Plaintiffs' items to Plaintiffs' home in Houston, Texas at 3:00 pm that same day." *Id.* ¶ 27. "Defendant Ackermann also demanded that Plaintiffs pay a purported remaining balance of $5,225.00 in cash or money orders upon delivery. Defendant Ackermann asserted that he would only take cash or United States Postal Service money orders and no other form of payment." *Id.*

"Plaintiff Sarah protested the cash/money order payment and disputed that Plaintiffs owed the money demanded by Defendants Ackermann, Ackermann LLC and Monopoly. Defendant Ackermann refused to deliver Plaintiffs' items and threatened to dump Plaintiffs' belongings in the desert unless Plaintiffs paid him the full amount demanded in cash or United States Postal Service money orders." *Id.* ¶ 28. "Plaintiffs requested that the delivery be delayed until at least Monday, September 26, 2022 so that cash or money orders could be obtained to pay the ransom payment as Defendant Ackermann had demanded. Defendant Ackermann never responded." *Id*. "On Monday, September 26, 2022, Plaintiff Sarah rushed as quickly as she could in the morning to get cash from her bank and then to the United States Post Office to get money orders to pay the $5,225.00 ransom demand. Then Plaintiff Sarah went back to Plaintiffs' home and waited." *Id.* ¶ 31.

"On September 26, 2022, shortly after Plaintiff Sarah returned home from the post office, Defendants Ackermann, Ackermann LLC and Monopoly showed up in a truck that was not the same truck that picked up Plaintiffs' belongings, shoved a bunch of paperwork in front of Plaintiff Sarah to sign, took Plaintiffs' money orders, dumped boxes of Plaintiffs' items in the garage and on the driveway of Plaintiffs' home, and refused to give Plaintiffs copies of the paperwork, including but not limited to the Bill of Lading[.]" *Id.* ¶ 32.

"Upon unpacking and inspecting their belongings, Plaintiffs found that a vast majority of Plaintiffs' items were either damaged or missing. Since Plaintiffs had been told by Defendant Hercules that Plaintiffs had insurance that covered their items, Plaintiffs submitted an insurance claim only to find out that USA Logistics was somehow involved in the insurance process, and for a claim of over $32,164.00 in damaged or missing items, Plaintiffs were offered payment of $375.60, which would require Plaintiffs to sign a Release Form. Plaintiffs did not accept and refused to sign the Release Form." *Id.* ¶ 33.

"None of the Defendants possess or possessed the required certifications and/or licenses from the Department of Consumer Affairs, Bureau Of Household Goods And Services in California." *Id.* ¶ 34. "Defendants' custom and practice to similarly extort

interstate customers like Plaintiffs out of cash for their property is shown in the many complaints of other consumers[.]" *Id.* ¶ 35.

"Defendants operated as if they were a single business entity by operating and working through affiliated companies named USA Logistics, Hercules, Rado, Monopoly, and other entities presently unknown." *Id.* ¶ 45. "Individual Defendants owned, operated, and/or worked as employees, members, and associates of the affiliated companies." *Id.* ¶ 46. "[E]ach of the Defendants amongst each other agreed to commit, and did so commit, at least two acts of racketeering activity." *Id.* ¶ 52.

Plaintiffs bring the following causes of action against Defendants: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violations of the Carmack Amendment; (3) violations of the California Control of Profits of Organized Crime Act ("CA RICO"); (4) Conversion/Civil Theft; (5) Fraudulent Inducement; (6) Rescission of Contract; (7) Breach of Fiduciary Duty; (8) Constructive Fraud; (9) Negligence; and (10) violations of Unfair Competition Laws. Plaintiffs seeks the following relief: preliminary and permanent injunctions on behalf of themselves and others similarly situated, enjoining and restraining Defendants from continuing the wrongful, unlawful, unfair and fraudulent business practices as set forth above; disgorgement; statutory and treble damages and penalties; compensatory damages; special damages; general damages; punitive damages; interest and prejudgment interest; reasonable attorney's fees' and costs; and such other relief as the Court deems just and proper.

## III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is 'proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Shroyer v. New Cingular*

*Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)). While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## IV. DISCUSSION

Defendants USA Logistics, Jeddae, Hercules, Rado, and Ohanesyan move to dismiss the claims against them on the following grounds: (1) the Bill of Lading limits their liability to $.60 per pound for damaged, lost, or destroyed property; (2) the Carmack Amendment preempts Plaintiffs' California statutory and common law claims; (3) Plaintiffs fail to adequately plead claims for civil RICO (4) Plaintiffs fail to adequately plead claims of conversion and constructive fraud against Defendant Rado; (5) Plaintiffs fail to adequately allege a Carmack Amendment claim against Defendant Hercules; and (6) Plaintiffs fail to plead personal liability against Defendants Jeddae and Ohanesyan.

/ / /

### A. Bill of Lading

Defendants first contend that the Bill of Lading limits their liability to $.60 per pound for Plaintiffs' damaged, lost, or destroyed property, and that Plaintiffs agreed to this limitation. (ECF No. 5 at 5; ECF No. 13 at 6.) However, the Complaint alleges that all contractual agreements have been rescinded. (ECF No. 1 ¶ 102.) Plaintiffs' allegations must be accepted as true for purposes of a 12(b)(6) motion. Additionally, Plaintiffs do not attach the Bill of Lading to their Complaint, and neither party has requested the Court consider the terms of the Bill of Lading pursuant to the incorporation-by-reference doctrine. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

### B. Preemption of State Law Claims

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). A federal statute completely preempts a state action when "the scope of a statute indicates that Congress intended federal law to occupy a field exclusively." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). The Carmack Amendment, enacted in 1906, was designed to establish a "national scheme of carrier liability for goods damaged or lost during interstate shipment." *Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 620 (9th Cir. 2005). The Carmack Amendment "provides the exclusive cause of action" against carriers for interstate shipping contract claims, and "it completely preempts state law claims alleging delay, loss, failure to deliver, and damage to property." *White v. Mayflower Transit, LLC*, 543 F.3d 581, 584 (9th Cir. 2008); *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007) (holding that the Carmack Amendment is the "exclusive cause of action" against a carrier of interstate goods, and this extends to "all manner of harms" arising from loss or damage to the shipment); *N.Y., New Haven & Hartford RR Co. v. Nothnagle*, 346 U.S. 128, 131 (1953) ("Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss.").

Plaintiffs concede that the Carmack Amendment preempts their conversion and negligence claims against USA Logistics and Hercules, who are alleged to be "carriers"

within the meaning of the Carmack Amendment. However, Plaintiffs contend that the Carmack Amendment does not preempt claims based on conduct independent from the loss or damage of Plaintiffs' belongings, such as Plaintiffs' RICO claims, which arise out of allegations of fraud and extortion. In *Hall*, the Ninth Circuit held that "the Carmack Amendment completely preempts a contract claim alleging the late delivery of goods, even without loss or property damage." *Hall*, 476 F.3d at 688. The Ninth Circuit reasoned that "making finer distinctions between the types of contract damages would 'defeat the purpose of the statute, which was to create uniformity out of disparity.'" *Id.* Since Plaintiffs' allegations of fraud and extortion arise out of Defendants' alleged refusal to deliver Plaintiffs' items, such claims against Defendants USA Logistics and Hercules are preempted by the Carmack Amendment. *See Titans Trading Corp. v. JTS Express*, No. CV 09-00714 MMM (RCx), 2009 WL 537515, at *3 (C.D. Cal. Mar. 3, 2009) (concluding that claims based on similar conduct were preempted by the Carmack Amendment because "courts have consistently held that the amendment preempts all state claims related to a shipping agreement"); *White v. Mayflower Transit, LLC*, 481 F. Supp. 2d 1105, 1109 n.3 (C.D. Cal. 2007) (holding that claims "for contractual fraud, insurance coverage, general negligence, and property damage relate[d] to the loss of, or damage to, plaintiff's personal belongings, [were] … preempted.").

To the extent Defendants contend the Carmack Amendment preempts state law claims against Rado, Jeddae, and Ohanesyan, these Defendants are not alleged to be "carriers" within the meaning of the Carmack Amendment. Based upon the allegations of the Complaint, the Carmack Amendment does not apply to these Defendants, and therefore, the Court does not find, at this stage in the proceedings, that the Carmack Amendment preempts the state law claims against them. *See Chubb Grp. of Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1068–69 (C.D. Cal. 2002) ("[T]he Carmack Amendment does not apply to brokers. … Consequently, most courts hold that brokers may be held liable under state tort or contract law in connection with shipments."); *FNS, Inc. v. Bowerman Trucking, Inc.*, No. 09–CV–0866–IEG (PCL), 2010 WL 532421, at *4 (S.D.

Cal. Feb. 9, 2010) ("The Court agrees that the Carmack Amendment does not preempt state law claims against brokers[.]").

The Motions to Dismiss the state law claims, as preempted by the Carmack Amendment are granted as to USA Logistics and Hercules and otherwise denied.

**C. RICO Claims**

The RICO Act provides for civil and criminal liability. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (citing Pub. L. No. 91-452, § 901, 84 Stat. 922 (1970)) (codified at 18 U.S.C. § 1964(c)). The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') [and] (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). "'Racketeering activity' includes, *inter alia*, 'any act which is indictable' under the Hobbs Act, 18 U.S.C. § 1951, or 'any act or threat involving … extortion, … which is chargeable under State law.'" *Id.* (quoting 18 U.S.C. § 1961(1)(A), (B)) (cleaned up). "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1) within a period of ten years." *Canyon County. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing 18 U.S.C. § 1961(5)). The Ninth Circuit has observed that "[t]he identification of a pattern of racketeering has proven a challenging task for courts." *Sever v. Ala. Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (quotation omitted). The Supreme Court in *H.J. Inc. v. Nw. Bell Telephone Co.*, 492 U.S. 229 (1989), "considered the term in an effort to provide some guidance to lower courts struggling with it" and "held that to show a pattern of racketeering activity, a RICO plaintiff must 'show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Sever*, 978 F.2d at 1535 (quoting *H.J. Inc.*, 492 U.S. at 239).

Federal Rule of Civil Procedure 9(b)'s "requirement that 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity' applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) (quoting *Alan Neuman Productions, Inc. v Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989)). Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). While state of mind may be generally alleged, "the factual circumstances of the fraud must be alleged with particularity." *Odom*, 486 F.3d at 554.

Plaintiffs assert the Complaint "provides facts that show or are the misrepresentations, how misrepresentations were made, dates, places, names of those involved, and by what means the representations were tendered." (ECF No. 11 at 16.) However, Plaintiffs frequently utilize group terms such as "Defendants," "Individual Defendants" and "Moving Enterprise," suggesting that all Defendants were involved in nearly all actions. (ECF No. 1 ¶ 38–56.) Under Rule 9(b)'s heightened pleading standard, Plaintiffs cannot "lump together the defendants without identifying the particular acts or omissions that each defendant committed." *Mostowfi v. i2Telecom Int'l., Inc.*, 269 Fed. Appx. 621, 624 (9th Cir. 2008); *see, e.g.*, *Thomas Land & Development, LLC v. Vratsinas Construction Company*, No. 18-CV-1896-AJB-NLS, 2019 WL 3842995, at *7 (explaining that "Plaintiff's frequent use of 'ENTITY DEFENDANTS' suggests that every named defendant was involved in nearly every alleged scheme and all collusive practices. This term prevents the Court from being able to distinguish which defendant was engaged in what wrongful conduct, more so if every named defendant was involved, it prevents the Court from understanding how they played a role.").

Furthermore, Plaintiffs allege "each of the Defendants" committed "at least two acts of racketeering activity in the conduct of the affairs of the Moving Enterprise." (ECF No. 1 ¶ 52.) However, Plaintiffs fail to identify the "who, what, when, where, and how" of the alleged acts, as required under Rule 9(b). *See Vess v. Ciba-Geirgy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (quoting *Cooper v. Pickett*, 137 F.3d

616, 627 (9th Cir. 1997)). Although some specific factual allegations underlying the RICO claims against non-moving Defendants Travis Ackermann, Ackermann Express, and Monopoly Moving can be identified in the Complaint (*see, e.g.*, ECF No. 1 ¶¶ 27–32,) the RICO claim fails to detail which of the moving Defendants are alleged to have committed which predicate acts, leaving the moving Defendants unable to determine whether or to what extent their alleged conduct was the subject of the extortion predicate acts.

Because Plaintiffs' civil RICO claims do not identify the "who, what, when, where, and how" of the alleged fraud, and impermissibly lump Defendants' actions together, failing to identify their individual acts with specificity, the Motions to Dismiss the civil RICO claims against the moving Defendants are granted.

### D. Constructive Fraud and Conversion Claims against Rado

Defendant Rado moves to dismiss the constructive fraud and conversion claims.[1] First, Rado contends Plaintiffs fail to allege constructive fraud against it because Rado does not owe fiduciary duties to Plaintiffs. While Plaintiffs allege Rado is a "broker" under the Carmack Amendment, Rado contends that the "transportation laws do not have any 'fiduciary' designations to brokers of household goods." (ECF No. 13 at 16.)

"Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." *Salahutdin v. Valley of Cal., Inc.*, 24 Cal. App. 4th 555, 562 (Ct. App. 1994) (citation omitted). To succeed in a constructive fraud claim, a plaintiff must show: (1) the existence of a fiduciary or confidential relationship; (2) nondisclosure; (3) intent to deceive; and (4) reliance and resulting injury. *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 516 n.14 (Ct. App. 1980). "Like fraud claims, constructive fraud claims [under California law] are subject to the particularity requirements of Rule 9(b)." *See Edumoz, LLC v. Republic of Mozambique*, No. CV 13-02309-MMM, 2014 WL 12802921, at *30 (C.D. Cal. July 21, 2014).

---

[1] As stated above, based upon the allegations of the Complaint, the Carmack Amendment preempts state law claims against USA Logistics and Hercules but does not preempt state law claims against Rado.

Under the Carmack Amendment, a "broker" is defined as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). Plaintiffs contend that Rado, as a broker, owed fiduciary duties to Plaintiffs because a broker acts as an agent of Plaintiffs. (ECF No. 14 at 9 ("[A] fiduciary relationship is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client.").)

However, Plaintiffs cite no authority for the assertion that a broker acts as an agent of the party who owns the shipped goods, or otherwise owes the owner a fiduciary duty. *See Oak Harbor Freight Lines v. Sears Roebuck & Co.*, 420 F. Supp. 2d 1138, 1147 (W.D. Wash. 2006) ("NLC has failed to provide any case law supporting its argument that the definitions of 'brokerage services' and 'non-brokerage services,' *see* 49 C.F.R. §§ 371.1(c)–(d), automatically make all brokers agents because they act 'on behalf of' someone else. NLC's argument overlooks the definition of broker in 49 U.S.C. § 13102(2), which explicitly states that a broker is a person who acts 'as a principal or agent' in arranging for transportation by motor carrier for compensation."). Moreover, where fraud is alleged against a corporation, a plaintiff must also "allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015). Plaintiffs fail to allege any acts by employees or agents of Rado. As such, the Complaint fails to adequately allege a constructive fraud claim against Rado.

Rado also contends Plaintiffs fail to adequately allege conversion against Rado because "Plaintiffs failed to demonstrate any wrongful dominion of Plaintiffs' property, or that [Rado] ha[s] been unjustly enriched." (ECF No. 13 at 13.) "The elements of a conversion cause of action are (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or

disposition of plaintiffs' property rights; and (3) damages." *Graham-Sult v. Clainos*, 756 F.3d 724, 737 (9th Cir. 2014) (alteration omitted).

Here, the Complaint alleges that Rado "substantially interfered with Plaintiffs' property by knowingly and/or intentionally preventing Plaintiffs from having access to their personal property and/or destroying Plaintiffs' personal property and/or refusing to return certain items of Plaintiffs' personal property after Plaintiffs demanded their return." (ECF No. 1 ¶ 82.) The Complaint alleges that this conduct "damaged Plaintiffs by interfering with and preventing access to their property and by way of payment of fees for an interstate move Defendants conducted illegally." *Id*. These allegations are sufficient to state a claim for conversion against Rado.

The Motion to Dismiss the constructive fraud claim against Rado is granted, and the Motion to Dismiss the conversion claim against Rado is denied.

### E. Carmack Amendment Claim against Hercules

Defendant Hercules moves to dismiss the Carmack Amendment claim. Defendant contends that the Complaint alleges Hercules is a broker, rendering the Carmack Amendment inapplicable to Hercules. The Carmack Amendment "subjects *common carriers and freight forwarders* transporting cargo in interstate commerce to absolute liability for actual loss or injury to property." *Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.*, 201 F.3d 1111, 1115 (9th Cir.2000) (emphasis added) (citing 49 U.S.C. § 14706(a)). The Carmack Amendment does not impose liability on brokers. *See Chubb*, 243 F. Supp. 2d at 1068–69. However, the Complaint alleges that Hercules "operates a common carrier business and/or as a purported broker." (ECF No. 1 ¶ 5.) Plaintiffs' allegations must be accepted as true for purposes of a 12(b)(6) motion. At this stage in the proceedings, Plaintiffs' contention that Hercules operates a common carrier business is sufficient to plausibly allege the Carmack Amendment is applicable to Hercules. Accordingly, the Motion to Dismiss the Carmack Amendment claim against Hercules is denied.

### F. Remaining Claims Against Jeddae and Ohanesyan

Defendants move to dismiss the conversion, rescission of contract, negligence, and unfair competition claims against Defendants Jeddae and Ohanesyan for lack of allegations supporting individual liability of these defendants. The Complaint fails to allege any facts specific to the conduct of Jeddae and Ohanesyan. The Motions to Dismiss the remaining claims against Defendants Jeddae and Ohanesyan are granted.

## V. CONCLUSION

IT IS HEREBY ORDERED the Motions to Dismiss (ECF Nos. 5, 13) are granted in part and denied in part, as discussed above. All claims dismissed in this Order are dismissed without prejudice and with leave to amend.

IT IS FURTHER ORDERED that no later than twenty-one days from the date this Order is filed, Plaintiffs may file a first amended complaint that addresses the deficiencies identified in this Order. If no first amended complaint is filed, Defendants shall file an answer to the Complaint no later than thirty days from the date this Order is filed.

Dated: September 24, 2024

Hon. William Q. Hayes
United States District Court