UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASZLO G. PETERFAI, an individual, SARAH JANE PETERFAI, an individual, and on behalf of themselves and others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>USA LOGISTICS INC., dba USA MOVERS, a California Corporation; TOP MOVING SPECIALISTS INC. dba HERCULES MOVING SOLUTIONS, a Florida Corporation; ACKERMANN EXPRESS LLC, an Arizona Limited Liability Company; MONOPOLY MOVING LLC, a Texas Corporation; RADO EXPRESS LOGISTICS, INC., an Illinois Corporation; GAL ROBI JEDDAE, an individual; TRAVIS ACKERMANN, an individual; RAFAEL OHANESYAN, an individual; and DOES 1 through 25, inclusive, | Case No.: 23-cv-1695-WQH-KSC<br><br>**ORDER** |

|   |   |
|---|---|
| 1 | Defendants. |
| 2 | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss First Amended Complaint (ECF No. 22) filed by Defendants Gal Robi Jeddae, USA Logistics Inc., Top Moving Specialists Inc., Rado Express Logistics, Inc., Rafael Ohanesyan, Monopoly Moving LLC, Travis Ackermann, and Ackermann Express LLC.

## I. BACKGROUND

On September 14, 2023, Plaintiffs Laszlo G. Peterfai and Sarah Jane Peterfai ("Plaintiffs") initiated this action by filing a Complaint against Defendants USA Logistics Inc. ("USA Logistics"), Top Moving Specialists Inc. d/b/a Hercules Moving Solutions ("Hercules"), Rado Express Logistics, Inc. ("Rado"), Ackermann Express LLC ("Ackermann Express"), Monopoly Moving LLC ("Monopoly Moving"), Gal Robi Jeddae ("Jeddae"), Travis Ackermann ("Ackermann"), and Rafael Ohanesyan ("Ohanesyan") (collectively, "Defendants"). (ECF No. 1.)

On November 29, 2023, Defendants USA Logistics and Jeddae filed a Motion to Dismiss. (ECF No. 5.)

On December 22, 2023, Defendants Ackermann, Ackermann Express, and Monopoly Moving filed an Answer to the Complaint. (ECF No. 8.)

On January 11, 2024, Defendants Hercules, Rado, and Ohanesyan filed a Motion to Dismiss. (ECF No. 13.)

On September 24, 2024, the Court issued an Order (the "September Order") granting in part and denying in part the Motions to Dismiss (ECF Nos. 5, 13). (ECF No. 17.)

On November 13, 2024, Plaintiffs filed the operative First Amended Complaint (the "FAC"). (FAC, ECF No. 20.)

On January 6, 2025, Defendants collectively filed the pending Motion to Dismiss First Amended Complaint (the "Motion to Dismiss"). (ECF No. 22.) On January 27, 2025,

Plaintiffs filed a Response in opposition to the Motion to Dismiss. (ECF No. 23.) On February 3, 2025, Defendants filed a Reply. (ECF No. 24.)

## II.   ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

"In the fall of 2022, Plaintiffs were moving from California to Texas." (FAC ¶ 19.) Plaintiff Sarah located Defendant Hercules through online research for moving companies. *Id.* "On or about September 3, 2022, Defendant Hercules communicated via internet and telephone to Plaintiffs to provide a quote and then 'Binding Moving Estimates' for packing and transporting household goods and furnishings from Rancho Santa Fe, California to Houston, Texas." *Id.*

In response to Plaintiff Sarah's request to use a moving "pod," Defendant Hercules represented that it "did not have any pods available until the first week of January 2023, but it had a 'turn around' truck, which would be less expensive, direct, and only Plaintiffs' belongings would be on that truck during the entirety of the transport." *Id.* ¶ 20. Defendant Hercules additionally represented that it "only hires moving companies with five-star ratings," and "Plaintiffs' items would not be transferred to another truck during transport." *Id.*

"On or about September 3, 2022, after instructing Plaintiffs to estimate the measurement for the items that Plaintiffs sought to move," Defendant Hercules sent Plaintiffs a written "'Binding Moving Estimate' with Defendant Hercules' logo at the top, for the interstate move of 652 cubic feet of Plaintiffs' household goods and furnishings from California to Texas." *Id.* ¶ 21. The Binding Moving Estimate "provided a Total Moving Estimate of $4,536.09 and at that time, Plaintiffs paid the requested 'Customer Payment' of $1,570.00 by credit card, which ultimately reflected on the credit card statement as a payment to Defendant Rado." *Id.*

On or about September 15, 2022, Plaintiffs added a few more items to their move and communicated the update to Defendant Hercules. *Id.* ¶ 22. In response, Defendant Hercules sent Plaintiffs "a second written 'Binding Moving Estimate' with Defendant Hercules' logo at the top, for the interstate move of 812 cubic feet of Plaintiffs' household

goods and furnishings from California to Texas." *Id.* The second Binding Moving Estimate provided a "Total Moving Estimate of $6,597.49 and Plaintiffs paid an additional $1,000.00 by credit card at that time to cover the requested 'Customer Payment.'" *Id.*

"On September 16, 2022, a moving truck arrived at Plaintiffs' home in Rancho Santa Fe, California with 7 men, whom Plaintiffs later learned to be associated with Defendant USA Logistics." *Id.* ¶ 23. These men told Plaintiffs that "the items they wanted moved needed to be taken out of Plaintiffs' home and garage and placed on the street and driveway and then placed on the truck." *Id.* Some of the men began packing items and wrapping furniture, while others removed all belongings designated for transport from Plaintiffs' home and garage, placing them in the street and driveway before loading them into the moving truck, "which appeared to be a standard 26 foot box truck." *Id.*

After Defendant USA Logistics' men had begun placing Plaintiffs' items on the truck, David of USA Logistics informed them that their items "would 'fill the entire truck'" and that the move would actually cost $23,000.00—"more than three times the amount contained in the [second Binding Moving Estimate]." *Id.* ¶ 24. As soon as David stated this, Plaintiff Laszlo instructed the men to stop and explained that "Plaintiffs would not be moving forward with the move." *Id.* ¶ 26. "David of USA Logistics then threatened Plaintiffs by saying that if Plaintiffs stopped the move, in addition to losing Plaintiffs' deposit of $2,570.00, Plaintiffs would have to pay $5,000.00 more to unload and place Plaintiffs' belongings in the street and driveway"—not even the house or garage. *Id.* ¶ 27. "Plaintiffs felt like they had no choice so when David said that Defendant USA Logistics would complete the move for $17,500.00, Plaintiffs paid the additional deposit demanded of $9,700.00 (at this time the total amount of deposits paid were $12,270). Despite Plaintiffs' protests, once the men from USA Logistics placed Plaintiffs' remaining items in the truck, they immediately drove away with Plaintiffs' belongings." *Id.* ¶ 28. "Defendant Jeddae and/or Doe Defendants 6-10 organized and directed employees of Defendant USA Logistics to intentionally and purposefully load items on to the moving truck" and then increase the price, in violation of USDOT regulations. *Id.* ¶ 25.

On or about September 24, 2022, at 12:30 p.m., Ackermann of Ackermann Express and Monopoly Moving called Plaintiff Sarah and informed her, for the first time, that he would "deliver Plaintiffs' items to Plaintiffs' home in Houston, Texas at 3:00 pm that same day." *Id.* ¶ 29. "Defendant Ackermann also demanded that Plaintiffs pay a purported remaining balance of $5,225.00 in cash or money orders upon delivery. Defendant Ackermann asserted that he would only take cash or United States Postal Service money orders and no other form of payment." *Id.* "Plaintiff Sarah protested the cash/money order payment and disputed that Plaintiffs owed the money demanded by Defendants Ackermann, Ackermann LLC and Monopoly." *Id.* ¶ 30. In response, "Defendant Ackermann refused to deliver Plaintiffs' items and threatened to dump Plaintiffs' belongings in the desert unless Plaintiffs paid him the full amount demanded in cash or United States Postal Service money orders." *Id.* "Plaintiffs requested that the delivery be delayed until at least Monday, September 26, 2022 so that cash or money orders could be obtained to pay the ransom payment as Defendant Ackermann had demanded. Defendant Ackermann never responded." *Id.* ¶ 31. "On Monday, September 26, 2022, Plaintiff Sarah rushed as quickly as she could in the morning to get cash from her bank and then to the United States Post Office to get money orders to pay the $5,225.00 ransom demand. Then Plaintiff Sarah went back to Plaintiffs' home and waited." *Id.* ¶ 33.

"On September 26, 2022, shortly after Plaintiff Sarah returned home from the post office, Defendants Ackermann, Ackermann LLC and Monopoly" arrived in a different truck than the one used to pick up Plaintiffs' belongings, forced paperwork on Plaintiff Sarah to sign, took Plaintiffs' money orders, dumped boxes of Plaintiffs' items in the garage and driveway, and refused to provide copies of the paperwork, including the Bill of Lading. *Id.* ¶ 34.

After unpacking, Plaintiffs realized that most of their items were either damaged or missing. *Id.* ¶ 35. Relying on Defendant Hercules' assurance that their items were insured, Plaintiffs submitted a claim, only to learn that USA Logistics was involved in the process.

*Id.* For over $32,164.00 in damages or losses, Plaintiffs were offered just $375.60—contingent on signing a Release Form, which they refused. *Id.*

"None of the Defendants possess or possessed the required certifications and/or licenses from the Department of Consumer Affairs, Bureau Of Household Goods And Services in California." *Id.* ¶ 36. Defendants' pattern of extorting interstate customers for their property is evidenced by numerous similar consumer complaints. *Id.* ¶ 37; *see also id.* ¶¶ 37–38, 51 (describing Defendants' alleged history of fraudulent behavior as exhibited by customer complaints and a *Newsweek* article).

"Defendants jointly constituted an 'enterprise' as defined in 18 U.S.C. section 1961(4)." *Id.* ¶ 47. Defendant Ohanesyan was the "leader and organizer of the enterprise" and "coordinated and directed other Defendants, other entities, lower level employees, members, and associates of the affiliated companies and was responsible for orchestrating the scheme" described in the FAC. *Id.* ¶ 50. "Defendant Ohanesyan along with Defendants Jeddae and Ackermann organized a network, across the United States of America, of affiliated companies, co-conspirators, employees and associates to defraud and extort consumers." *Id.* ¶ 51. The enterprise "constitutes an ongoing and continuing organization whose members function as a continuing unit for the common purpose of achieving the objectives and purposes of" the enterprise. *Id.* ¶ 54.

"Defendants operated as if they were a single business entity by operating and working through affiliated companies named USA Logistics, Hercules, Rado, Monopoly, and other entities presently unknown." *Id.* ¶ 48. "Individual Defendants owned, operated, and/or worked as employees, members, and associates of the affiliated companies." *Id.* ¶ 49. "[E]ach of the Defendants amongst each other agreed to commit, and did so commit, at least two acts of racketeering activity" such as "(a) 18 U.S.C. §1343 (wire fraud); (b) 18 U.S.C. §659 (theft from interstate shipment); (c) 18 U.S.C. §1951(a) (interference with commerce, robbery, or extortion); (d) California Penal Code §186.2(5) (embezzlement);

(e) California Penal Code §186.2(6) (extortion); and (f) California Penal Code §186.2(25) (conspiracy to commit a crime)." *Id.* ¶¶ 52,[1] 55.

Plaintiffs assert the following causes of action against all Defendants: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violations of the California Control of Profits of Organized Crime Act ("CA RICO"); and (3) Rescission of Contract. Plaintiffs assert a cause of action for violations of the Carmack Amendment against Defendants USA Logistics, Ackermann LLC, Hercules (only if determined to have been a carrier at all relevant times), and Does 16–20 (collectively, the "Carrier Defendants"). Plaintiffs assert the following causes of action against all Defendants except the Carrier Defendants: (1) Conversion/Civil Theft; (2) Negligence; and (3) violations of Unfair Competition Laws. Finally, Plaintiffs assert a cause of action for Constructive Fraud against Defendants Hercules and Does 11–15.

Plaintiffs seek the following relief: preliminary and permanent injunctions on behalf of themselves and others similarly situated, enjoining and restraining Defendants from continuing the wrongful, unlawful, unfair and fraudulent business practices as set forth above; disgorgement; statutory and treble damages and penalties; compensatory damages; special damages; general damages; punitive damages; interest and prejudgment interest; reasonable attorney's fees and costs; and such other relief as the Court deems just and proper.

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is 'proper only where there is no cognizable legal theory or an absence of

---

[1] Although labeled as paragraph fifty-two on page twenty-one of the FAC, this appears to be a typographical error, as the paragraph is situated between paragraphs fifty-five and fifty-six.

sufficient facts alleged to support a cognizable legal theory.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)). While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Federal Rule of Civil Procedure 9(b) applies where a plaintiff alleges fraud, including in the context of civil RICO claims. *See* Fed. R. Civ. P. 9(b); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989)). Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny

that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted).

## IV. DISCUSSION

Defendants move to dismiss Plaintiffs' claims against them on the following grounds: (1) Federal law preempts Plaintiffs' California statutory and common law claims; (2) the Bill of Lading is the contract between the parties and its provisions and limitations on liability control; (3) Plaintiffs fail to plead conversion; (4) Plaintiffs fail to plead RICO claims; (5) Plaintiffs fail to plead constructive fraud against Defendant Hercules; (6) Plaintiffs fail to plead personal liability against Defendants Jeddae, Ohanesyan, and Ackermann (the "Individual Defendants"); and (7) Plaintiffs fail to allege any specific acts of Defendant Rado.

### A. Bill of Lading

Defendants contend that the Bill of Lading limits the Carrier Defendants' liability to $0.60 per pound for Plaintiffs' damaged, lost, or destroyed property, and that Plaintiffs agreed to this limitation by signing the Bill of Lading. (ECF No. 22-1 at 10.) Plaintiffs do not attach the Bill of Lading to the FAC. Generally, when ruling on a motion to dismiss, "a district court may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, Defendants attach the Bill of Lading ("Exhibit 2") to their Motion to Dismiss (ECF No. 22-3) and request the Court consider the terms of the Bill of Lading pursuant to the incorporation-by-reference doctrine. (ECF No. 22-1 at 21.)

The incorporation-by-reference doctrine permits a court to "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)) (alteration in original).

Plaintiffs contend that "Defendants' Exhibit 2 does not comport with papers and pictures in Plaintiffs' possession" and that "Defendants have failed to authenticate Exhibit

2." (ECF No. 23 at 16.) Because Plaintiffs dispute the authenticity of the Bill of Lading submitted by Defendants, and "the court must accept [their] representation that there is a dispute for purposes of applying the incorporation by reference doctrine," *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1027 n.77 (C.D. Cal. 2015), the Court declines to incorporate-by-reference the Bill of Lading.[2]

Because the Court declines to incorporate-by-reference the Bill of Lading, the Court does not consider Defendants' contention that "the Bill of Lading is the contract between the parties and its provisions and limitations on liability control." (ECF No. 22-1 at 9.)

**B. The RICO Claims**

Defendants contend that Plaintiffs' RICO claims should be dismissed for failure to meet the heightened pleading requirements established by Rule 9(b) of the Federal Rules of Civil Procedure and for failure to identify, with the requisite specificity, two predicate acts of racketeering activity.

As the Court noted in the September Order:

> The RICO Act provides for civil and criminal liability. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (citing Pub. L. No. 91-452, § 901, 84 Stat. 922 (1970)) (codified at 18 U.S.C. § 1964(c)). The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') [and] (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). "'Racketeering activity' includes, *inter alia*, 'any act which is indictable' under the Hobbs Act, 18 U.S.C. § 1951, or 'any act or threat involving … extortion, … which is chargeable under State law.'" *Id.*

---

[2] The Court notes Defendants' contention that "California law is clear that contracts at issue must be attached to the complaint," (ECF No. 24 at 8), but finds that any such state-law pleading requirements are inapplicable in federal court. *Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021) ("Pleading in federal court is governed by Federal Rules of Civil Procedure, not state pleading requirements.").

The Court further notes Defendants' request for judicial notice of Exhibit 1 to the Motion to Dismiss, (*see* ECF No. 24 at 8), but declines to take judicial notice of the document, as the Court does not rely on it in this Order. *Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

> (quoting 18 U.S.C. § 1961(1)(A), (B)) (cleaned up). "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1) within a period of ten years." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing 18 U.S.C. § 1961(5)). The Ninth Circuit has observed that "[t]he identification of a pattern of racketeering has proven a challenging task for courts." *Sever v. Ala. Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (quotation omitted). The Supreme Court in *H.J. Inc. v. Nw. Bell Telephone Co.*, 492 U.S. 229 (1989), "considered the term in an effort to provide some guidance to lower courts struggling with it" and "held that to show a pattern of racketeering activity, a RICO plaintiff must 'show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Sever*, 978 F.2d at 1535 (quoting *H.J. Inc.*, 492 U.S. at 239).

(ECF No. 17 at 10.) The Court additionally notes that "Congress enacted RICO to combat organized crime, not to provide a federal cause of action and treble damages" for every tort plaintiff. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002)

As relevant to their RICO claims, Plaintiffs allege that:

> From at least on or about September 2020, and continuing through the date of the complaint was filed, in the Southern District of California and elsewhere, Defendants, and each being a person or entity employed by, a member of, and associated with the Moving Enterprise, an Enterprise engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown, did knowingly and intentionally conspire to conduct and participate, and did conduct and participate, directly and indirectly, in the conduct of the affairs of the Moving Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §1961(1) and (5) and California Penal Code §186.2, consisting of multiple acts indictable under: (a) 18 U.S.C. §1343 (wire fraud); (b) 18 U.S.C. §659 (theft from interstate shipment); (c) 18 U.S.C. §1951(a) (interference with commerce, robbery, or extortion); (d) California Penal Code §186.2(5) (embezzlement); (e) California Penal Code §186.2(6) (extortion); and (f) California Penal Code §186.2(25) (conspiracy to commit a crime).

(FAC ¶ 55.)

Plaintiffs contend that, "[a]fter the Court previously found that the initial Complaint did not state facts with sufficient specificity, Plaintiffs submitted a comprehensive FAC

setting forth facts that detail and identify the 'who, what, when, where, and how' of the alleged acts, as required under Rule 9(b)." (ECF No. 23 at 9.) However, the Court finds that Plaintiffs' FAC still fails to clearly allege which Defendants committed which of the six alleged predicate acts and when those acts occurred. Although the statements in the FAC highlighted by Plaintiffs in their opposition allow for some inference that specific Defendants may have engaged in acts such as extortion or theft from interstate shipment on certain dates, the remaining alleged predicate acts—such as wire fraud, embezzlement, and conspiracy—are not sufficiently supported by factual allegations to satisfy the heightened pleading standard of Rule 9(b).[3] *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (finding that Rule 9(b) requires pleadings to identify "the circumstances constituting fraud so that a defendant can prepare an adequate answer"). Furthermore, isolated allegations that some Defendants committed a single act on a particular date do not satisfy the RICO requirement of showing a pattern of racketeering activity, which necessitates a series of related predicate acts extending over a substantial period of time. *See H.J. Inc.*, 492 U.S. at 241–42 (discussing RICO's pattern element and its requirement of continuity over a "substantial period of time").

---

[3] Although paragraph fifty-six of the FAC contains additional detail regarding several alleged predicate acts—for example, that "[i]t was and is further part of the Moving Enterprise that its members use wire communications, such as emails, to send false representations to customers and potential customers, such as Plaintiffs, to induce them to hire affiliated companies of the Moving Enterprise to move their household goods"; that "[i]t was and is further part of the Moving Enterprise that its members at times caused customers' household goods to be stolen while transporting the goods interstate by not delivering the household goods after loading them and receiving payment"; and that "[a]s shown herein, consumers, including Plaintiffs, paid money to Defendants who reinvested the racketeering money by paying (a) insurance needed for USDOT licenses, (b) USDOT license fees, (c) Secretary of State filing fees for business entities, and (d) other fees, which all enabled and continues to enable Defendants to profit from their racketeering," (FAC ¶ 56)—the Court noted in the September Order that, "[u]nder Rule 9(b)'s heightened pleading standard, Plaintiffs cannot 'lump together the defendants without identifying the particular acts or omissions that each defendant committed.'" (ECF No. 17 at 11 (quoting *Mostowfi v. i2Telecom Int'l, Inc.*, 269 Fed. Appx. 621, 624 (9th Cir. 2008)).) The FAC's continued use of generalized group allegations impermissibly suggests that all Defendants participated in each predicate act and does not satisfy Rule 9(b)'s heightened pleading standard.

Accordingly, the Motion to Dismiss the civil RICO claims against the Defendants is granted.

**C. Preemption of State Law Claims**

Defendants contend that Plaintiffs' claims for: (1) RICO; (2) CA RICO; (3) Conversion/Civil Theft; (4) Rescission of Contract; (5) Constructive Fraud; (6) Negligence; and (7) Violations of Unfair Competition Laws are barred under the Carmack Amendment, which "preempts state and common law remedies against interstate carriers." (ECF No. 22-1 at 8.) Because the Court has dismissed Plaintiffs' RICO and CA RICO claims on other grounds, it does not consider whether they are preempted.

As discussed in the September Order:

> The Carmack Amendment, enacted in 1906, was designed to establish a "national scheme of carrier liability for goods damaged or lost during interstate shipment." *Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 620 (9th Cir. 2005). The Carmack Amendment "provides the exclusive cause of action" against carriers for interstate shipping contract claims, and "it completely preempts state law claims alleging delay, loss, failure to deliver, and damage to property." *White v. Mayflower Transit, LLC*, 543 F.3d 581, 584 (9th Cir. 2008); *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007) (holding that the Carmack Amendment is the "exclusive cause of action" against a carrier of interstate goods, and this extends to "all manner of harms" arising from loss or damage to the shipment); *N.Y., New Haven & Hartford RR Co. v. Nothnagle*, 346 U.S. 128, 131 (1953) ("Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss.").

(ECF No. 17 at 8.)

Plaintiffs assert claims against two sets of defendants: the Carrier Defendants (Defendants USA Logistics, Ackermann LLC, Hercules, and Does 16–20) and the Non-Carrier Defendants (Defendants Jeddae, Rado, Ohanesyan, Monopoly Moving, Ackermann, and Hercules).[4]

---

[4] Plaintiffs include Defendant Hercules in the definition of "Non-Carrier Defendants" only to the extent Hercules is found not to have been a carrier during the relevant period. (ECF No. 23 at 5, 14 ("Hercules

As the Court held in the September Order, the Carmack Amendment does not extend to defendants not alleged to be carriers. (ECF No. 17 at 9 (citing *Chubb Grp. of Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1068–69 (C.D. Cal. 2002) and *FNS, Inc. v. Bowerman Trucking, Inc.*, No. 09–CV–0866–IEG (PCL), 2010 WL 532421, at *4 (S.D. Cal. Feb. 9, 2010)).) Consequently, based upon the allegations of the FAC, the Court rejects Defendants' argument that Plaintiffs' state-law claims against Non-Carrier Defendants are barred by the Carmack Amendment and denies their motion to dismiss these claims on preemption grounds.

Plaintiffs' remaining state-law claim against the Carrier Defendants is limited to rescission of contract. Although Plaintiffs contend that "[s]tate law claims, such as the California RICO claim, that are based on facts that are separate and independent to the loss or damages to goods survive preemption under Carmack," (ECF No. 23 at 12), this Court held otherwise in the September Order. (*See* ECF No. 17 at 9.) Plaintiffs' rescission of contract claim—premised on allegations of fraud—is preempted by the Carmack Amendment, which "constitutes a complete defense to common law claims against interstate carriers for negligence, fraud and conversion, even though these claims may not be completely preempted." *White*, 543 F.3d at 584. Because Plaintiffs' rescission of contract claim arises from allegations of fraudulent inducement, it falls within the scope of the Carmack Amendment's preemptive reach. *See Gummer v. Am. Choice Van Lines, LLC*, No. 3:11-CV-00808-SC, 2011 WL 5599854, at *2 (N.D. Cal. Nov. 17, 2011) (holding that a rescission claim based on fraudulent inducement could not escape Carmack preemption). Accordingly, Plaintiffs' rescission claim is dismissed as preempted as to the Carrier Defendants.

**D. Conversion Claim Against the Non-Carrier Defendants**

---

shall be included as one of the Non-Carrier Defendants only if Hercules is determined to have not been a carrier at all relevant times.").)

Defendants move to dismiss Plaintiffs' conversion/civil theft claim, which is asserted against the Non-Carrier Defendants only. Defendants contend that Plaintiffs' conversion claim fails because "Plaintiffs failed to demonstrate any wrongful dominion of Plaintiffs' property, or that Defendants have been unjustly enriched." (ECF No. 22-1 at 12.)[5]

"The elements of a conversion cause of action are (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." *Graham-Sult v. Clainos*, 756 F.3d 724, 737 (9th Cir. 2014) (alteration omitted).

Here, the Complaint alleges that "Defendants substantially interfered with Plaintiffs' property by knowingly and/or intentionally preventing Plaintiffs from having access to their personal property and/or destroying Plaintiffs' personal property and/or refusing to return certain items of Plaintiffs' personal property after Plaintiffs demanded their return." (FAC ¶ 85.) The Complaint alleges that this conduct "damaged Plaintiffs by interfering with and preventing access to their property and by way of payment of fees for an interstate move Defendants conducted illegally." *Id.* ¶ 87. As this Court found in the September Order as to Defendant Rado only, these allegations are sufficient to state a claim for conversion against the Non-Carrier Defendants.

Defendants' Motion to Dismiss Plaintiffs' conversion claim is denied.

**E. Constructive Fraud Claim Against Hercules**

Defendants move to dismiss Plaintiffs' constructive fraud claim against Defendant Hercules.[6] Defendants contend that Plaintiffs fail to allege constructive fraud against

---

[5] The Court notes that Defendants cite to several cases discussing the doctrine of conversion in relation to carriers. However, because Plaintiffs allege conversion as to the Non-Carrier Defendants only, the Court does not consider Defendants' contentions relating to carriers.

[6] As discussed briefly above, Plaintiffs allege that "Defendant Hercules purportedly operates a common carrier business and/or [is] a purported broker." (FAC ¶ 5.) As such, Plaintiffs contend that "Hercules shall be included as one of the Non-Carrier Defendants only if Hercules is determined to have not been a carrier at all relevant times" and that this claim is "pled in the alternative that Hercules is a Non-Carrier

Hercules because "[n]owhere in the First Amended Complaint have Plaintiffs explained any fiduciary relationship with any Defendant." (ECF No. 22-1 at 14.) "The term 'broker' was used in the Complaint, but there are no allegations a broker in the transportation industry is, for example, a 'broker' in real estate or selling financial assets." *Id.*

"Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." *Salahutdin v. Valley of Cal., Inc.*, 24 Cal. App. 4th 555, 562 (Ct. App. 1994) (citation omitted). To succeed in a constructive fraud claim, a plaintiff must show: (1) the existence of a fiduciary or confidential relationship; (2) nondisclosure; (3) intent to deceive; and (4) reliance and resulting injury. *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 516 n.14 (Ct. App. 1980). "Like fraud claims, constructive fraud claims [under California law] are subject to the particularity requirements of Rule 9(b)." *See Edumoz, LLC v. Republic of Mozambique*, No. CV 13-02309-MMM, 2014 WL 12802921, at *30 (C.D. Cal. July 21, 2014).

In their opposition to Defendants' Motion to Dismiss, Plaintiffs contend that an excerpt contained in the Motion to Dismiss proves that Hercules has admitted "it was acting on behalf of Plaintiffs (as a principal) with Hercules as an agent," and thus, the FAC properly alleges a constructive fraud cause of action against Hercules. (ECF No. 23 at 14–15.) Plaintiffs rely on the following excerpt of the "terms and conditions of [Hercules'] confirmation e-mail," which is quoted in and attached to Defendants' Motion to Dismiss:

> ***Customer has hired Hercules Moving Solutions as a moving coordinator/shipper agent / broker*** and not to handle or otherwise participate in a move as a carrier ***in acting as a shipper agent only***, Hercules Moving Solutions is not responsible for any acts or omissions of the carrier or its employees or agents. Customer must pursue the carrier for all claims for property damage and personal injury or death, including without limitation, any daims [sic] for damage to property, lost or stolen goods, delayed pickup or delivery, actions of estimators, drivers, packers or movers, or other types

---

Defendant." (ECF No. 23 at 5, 14.) Plaintiffs' allegations must be accepted as true for purposes of a 12(b)(6) motion. At this stage in the proceedings, Plaintiffs' contention that Hercules is a broker is sufficient to allege this claim against Hercules in the alternative.

of claims. ***Hercules Moving Solutions will act on behalf of tile [sic] customer in resolving any claims or delay issues with the carrier.***

(*See* ECF No. 22-1 at 22 (emphasis added); *see also* ECF No. 22-3 ("Exhibit 3") at 12.)

As the Court previously noted, a district court generally "may not consider any material beyond the pleadings" when ruling on a motion to dismiss. *Hal Roach Studios, Inc.*, 896 F.2d at 1555 n.19. However, under the incorporation-by-reference doctrine, courts may consider "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel*, 393 F.3d at 1076 (alteration in original) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 986). The Ninth Circuit has extended this doctrine to include situations where a plaintiff's claim necessarily relies on a document, the defendant attaches the document to its motion to dismiss, and no party disputes its authenticity—even if the complaint does not explicitly reference its contents. *Id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

Plaintiffs allege that "Defendant[ ] Hercules … owed Plaintiffs a fiduciary duty" and that it "acted on Plaintiffs' behalf in connection with the transport of Plaintiffs' personal property from California to Texas." (FAC ¶¶ 96–97.) As such, the FAC necessarily relies on the document containing Hercules' terms and conditions to assert a fiduciary relationship between Hercules and Plaintiffs. Since Defendants attached Exhibit 3 to their Motion to Dismiss and Plaintiffs rely on it in their opposition, the parties evidently do not contest its authenticity. Accordingly, although the FAC does not explicitly reference the contents of Exhibit 3, the Court may properly consider its contents under the incorporation-by-reference doctrine.

As discussed above and reflected in the terms and conditions set forth in Exhibit 3, Hercules was expressly authorized to act *on behalf of* Plaintiffs as their "shipper agent." In that capacity, Plaintiffs have sufficiently alleged that Hercules owed Plaintiffs a fiduciary duty—at minimum, to accurately represent the terms of the transportation arrangement that it arranged on Plaintiffs' behalf. Plaintiffs allege that Hercules breached this duty by

misrepresenting: (1) "that Plaintiffs' belongings would be on a 'turn around' truck," and (2) that the total cost of the move would be $6,597.49. (FAC ¶¶ 98–99.) Because Defendants contend only that "Plaintiffs have not described any fiduciary relationship," and do not otherwise challenge the sufficiency of Plaintiffs' allegations regarding the remaining elements of constructive fraud as to Hercules, the Court finds no basis to dismiss the constructive fraud claim against Hercules. Accordingly, Defendants' Motion to Dismiss this claim is denied.

### F. Claims Against the Individual Defendants

Defendants contend that Plaintiffs' allegations against the Individual Defendants fail to "support any liability" against them because the FAC "never specifies any date, conduct, or even a communication with any individual acting outside their scope as agents of the broker and motor carriers." (ECF No. 22-1 at 17.) In opposition, Plaintiffs contend that "[t]he FAC alleges facts that specifically describe the conduct of [the Individual Defendants] and how they engaged and/or participated in the alleged unlawful acts against Plaintiffs." (ECF No. 23 at 12.)

Because the Court has dismissed Plaintiffs' RICO and California RICO claims against all Defendants, the Court addresses Defendants' contentions only as they pertain to Plaintiffs' remaining claims against the Individual Defendants: negligence, conversion, California Unfair Competition Laws (UCL), and rescission of contract.

It is settled California law that "[i]f a tortious act has been committed by an agent acting under authority of his principal, the fact that the principal thus becomes liable does not of course exonerate the agent from liability." *Perkins v. Blauth*, 163 Cal. 782, 787 (1912); *see also PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1381 (Ct. App. 2000) ("[A]n agent is liable for her or his own acts, regardless whether the principal is also liable."). The FAC alleges that the Individual Defendants committed the tortious acts of negligence and conversion in their capacity as agents of the relevant companies. The fact that Plaintiffs also allege that the broker and Carrier Defendants are liable for these acts does not exonerate the Individual Defendants from liability for their alleged actions.

Additionally, pursuant to the UCL, "individual liability for agents and managers of a corporation is permitted as long as the underlying cause of action can be alleged against them." *See Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 924 (N.D. Cal. 2024). Plaintiffs allege that "Defendants violated the unlawful prong of the UCL by … committing conversion/civil theft." (FAC ¶ 110.) Since the underlying allegation of conversion can be alleged against the Individual Defendants, Plaintiffs' UCL claim survives as well.

Lastly, Plaintiffs bring a cause of action for rescission of contract under California Civil Code § 1689 against the Individual Defendants. California Civil Code § 1689 provides a party to a contract the opportunity to rescind such contracts if the party's consent "was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds." Cal. Civ. Code § 1689(b)(1). To the extent Plaintiffs allege that they contracted with the Individual Defendants, the Court declines to dismiss this claim against them.

At this stage of the proceedings, Plaintiffs' remaining claims against the Individual Defendants survive and Defendants' Motion to Dismiss on these grounds is denied.

### G. Remaining Claims Against Rado

Defendants move to dismiss the claims asserted against Defendant Rado on the grounds that "[t]he operative pleading never identifies a single act of a single employee, officer, or agent of [Rado]." (ECF No. 22-1 at 20–21.) Plaintiffs do not appear to oppose the Motion, (*see generally* ECF No. 23), and the Court agrees with Defendants that Plaintiffs fail to allege any facts specific to Rado's conduct. Accordingly, all remaining claims against Rado are dismissed.

## V. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 22) is granted in part and denied in part, as follows: Defendants' request to incorporate-by-reference the Bill of Lading is denied; Defendants' motion to dismiss Plaintiffs' federal and California RICO claims against all Defendants is granted; Defendants' motion to dismiss Plaintiffs' claim

for rescission of contract against the Carrier Defendants is granted on the ground that the claim is preempted by the Carmack Amendment. The motion is otherwise denied as to preemption under the Carmack Amendment; Defendants' motion to dismiss Plaintiffs' conversion claim is denied; Defendants' motion to dismiss Plaintiffs' constructive fraud claim against Defendant Hercules is denied; Defendants' motion to dismiss Plaintiffs' claims against the Individual Defendants is denied; and Defendants' motion to dismiss Plaintiffs' remaining claims against Defendant Rado is granted. All claims dismissed in this Order are dismissed without prejudice and with leave to amend.

IT IS FURTHER ORDERED that no later than twenty-one days from the date this Order is filed, Plaintiffs may file a second amended complaint that addresses the deficiencies identified in this Order. If no second amended complaint is filed, Defendants shall file an answer to the First Amended Complaint no later than thirty days from the date this Order is filed.

Dated: May 30, 2025

/s/ William Q. Hayes
Hon. William Q. Hayes
United States District Court